[No. B071970. Second Dist., Div. Three. Aug. 31, 1993.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
J. ARA KUSAR et al., Real Parties in Interest.

---

**COUNSEL**

De Witt W. Clinton, County Counsel, and Rafael A. Ongkeko, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Bauer, O'Brien & Bernstein and Ernest S. Gould for Real Parties in Interest.

---

**OPINION**

**CROSKEY, J.**—The petitioner, County of Los Angeles (herein the County), seeks extraordinary writ relief to compel the trial court to vacate its order requiring the County to generate and disclose to the real party in interest, J. Ara Kusar (herein Kusar), certain recorded information regarding every person arrested (for certain particular offenses) by two specifically named deputy sheriffs over a ten-year period beginning January 1, 1981.

We conclude that the trial court's order compels a disclosure of official governmental records which is neither required nor authorized by the statutory scheme relied upon by Kusar. We will therefore grant the requested writ relief.

### FACTUAL AND PROCEDURAL BACKGROUND

The issues presented to us are legal in nature and depend upon the following factual background, which is not in dispute.

This action was commenced on September 18, 1992, by Kusar who is a legal secretary in the law offices of Ernest S. Gould, Esq., one of the attorneys of record in this matter, to enforce rights under the California Public Records Act. (Gov. Code, § 6250 et seq.)[1] As we explain below, it

---

[1] Unless otherwise indicated, all statutory references are to the Government Code.

Section 6250 provides: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."

appears that Kusar commenced these proceedings to obtain access to certain public record information previously denied to Mr. Gould's client by an adverse discovery ruling in a separate civil action for damages arising from the alleged use of excessive force by law enforcement officers. Kusar's complaint (in fact, a petition for an order compelling disclosure of public records) was brought pursuant to the procedural authority set out in section 6258.[2]

The records for which disclosure is sought are those in the possession of the Los Angeles County Sheriff which disclose all of the information specified in section 6254, subdivision (f)(1) and (2)[3] as to each of those individuals arrested by Deputy Sheriffs Jeffrey Bailey (Bailey) and Charles Morales (Morales) during the 10-year period commencing on January 1,

[2]Section 6258 provides: "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter. The times for responsive pleadings and for hearings in these proceedings shall be set by the judge of the court with the object of securing a decision as to these matters at the earliest possible time."

[3]Section 6254 provides a description of public records which are *not* required to be disclosed by chapter 3.5 (relating to inspection of public records) of the Government Code. Subdivision (f) describes a particular category of such exempt public records:

"Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes, except that state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident caused by arson, burglary, fire, explosion, larceny, robbery, vandalism, vehicle theft, or a crime as defined by subdivision (c) of Section 13960, unless the disclosure would endanger the safety of a witness or other person involved in the investigation, or unless disclosure would endanger the successful completion of the investigation or a related investigation. However, nothing in this division shall require the disclosure of that portion of those investigative files which reflect the analysis or conclusions of the investigating officer.

"*Other provisions of this subdivision notwithstanding, state and local law enforcement agencies shall make public the following information, except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation:*

"(1) The full name, current address, and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all

1981, for certain crimes in which Bailey and/or Morales claimed to be the "victim."[4]

Bailey and Morales are currently defendants in a separate pending civil action brought by one Frank McMurray (McMurray) in which it is alleged that the two deputies on March 2, 1988, committed an assault and battery upon him and violated his civil rights (L.A. Super. Ct. No. EAC 72546). McMurray is represented in that action by the same Ernest S. Gould who is counsel in this matter.[5]

---

charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds.

"(2) Subject to the restrictions imposed by Section 841.5 of the Penal Code [relating to limitations on disclosure to a criminal defendant of the address and telephone number of victims or witnesses], the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, the time and date of the report, the name, age, and current address of the victim, except that the address of the victim of any crime defined by Section 261, 264, 264.1, 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, or 422.75 of the Penal Code shall not be disclosed, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved. The name of a victim of any crime defined by Section 261, 264, 264.1 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, or 422.75 of the Penal Code may be withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor. When a person is the victim of more than one crime, information disclosing that the person is a victim of a crime defined by Section 261, 264, 264.1, 273a, 273d, 286, 288, 288a, 289, 422.6, 422.7, or 422.75 of the Penal Code may be deleted at the request of the victim, or the victim's parent or guardian if the victim is a minor, in making the report of the crime, or of any crime or incident accompanying the crime, available to the public in compliance with the requirements of this paragraph." (Italics added.)

[4]It would appear that those offenses would include such crimes as resisting arrest, assault on a police officer and similar violations of the laws regulating citizen response to law enforcement activity. The specific wording of Kusar's document request is as follows:

"Pursuant to California Government Code, § 6254(f)(1) and (2), with respect to each incident since January 1, 1981 in which Sheriff's Deputy Jeffrey Bailey (ID Number 209509) and/or Sheriff's Deputy Charles Morales (ID Number 135383), or either of them, claim to have been the victim of any crime set forth in California Penal Code, §§ 69, 148, 240, 243(b) or 245, please provide the following information:

"The full name, current address, and occupation of every individual arrested by the Los Angeles County Sheriff's Department with respect to the above deputies and crimes, including the arrestee-individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges an individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds."

[5]For reasons not disclosed by the record, Ernest S. Gould was added as a plaintiff in this matter on October 16, 1992. Thus, he also represents himself in this case.

Disclosure of the same information sought here was previously sought by appropriate discovery procedures in the McMurray action. When the County refused to produce the information, asserting essentially the same reasons as it urges here, McMurray brought a motion to compel, which was denied. He then filed a petition for a writ of mandate in this court, which we summarily denied on May 19, 1992. Kusar tacitly concedes that this action, doubtless brought at the instigation of Mr. Gould, McMurray's attorney, is a second effort to obtain disclosure of the same records which were denied McMurray under the relevant discovery statutes.[6]

On September 18, 1992, Kusar filed this action in the trial court, as authorized by section 6258, to enforce the claimed right to disclosure of certain public records. On or about September 23, 1992, Kusar filed a motion for a specific order compelling the requested information. On October 14, 1992, the trial judge assigned the matter to a discovery referee who conducted a hearing and heard the argument of counsel. On October 28, 1992, the referee submitted his recommendation that Kusar's motion be granted subject to the condition that Kusar pay the actual cost incurred by the County in generating and producing the requested information.[7] Thereafter, on November 17, 1992, the trial court modified the referee's recommendations by limiting Kusar's financial responsibility to the County's "cost of duplication" and reduced the County's liability for attorney fees to $2,000; as so modified the referee's recommendations were adopted.

On December 14, 1992, the County filed the instant petition which also included a request for a stay. We issued an alternative writ on December 31, 1992, and set the matter for hearing. Through oversight, we did not rule on the County's stay request. However, this omission was corrected on February 10, 1993, when we issued a stay of the trial court's order of November 17, 1992, pending our determination of the petition.

---

[6]In footnote 5 of his responsive brief in this matter, Kusar argues: "Using a bit more smoke, the County Counsel asserts that the same information sought here was sought and denied in discovery proceedings in the pending case of McMurray v. Block, Los Angeles Superior Court Case Number EAC 72546. The County Counsel would attempt to use a 'catch 22' argument that the instant Public Records Act proceeding is unnecessary since discovery proceedings provide an 'alternative' method of obtaining the information. That argument is irrelevant to the issues presently presented under the Public Records Act and the instant Petition. The purpose for which public information is sought is immaterial to determine the propriety of the request." (Italics added.)

[7]The referee included in his recommendation to the trial court that Kusar's counsel be paid nearly $5,000 in attorney fees and that the County also was to be responsible for charges ($1,800) incurred for the six hours of time expended by him in conducting the hearing and preparing his report.

ISSUES PRESENTED

This case primarily presents a question of statutory construction. We must determine, in light of the statutory language, the legislative history, other relevant statutory provisions and applicable public policies, whether section 6254, subdivision (f), requires the disclosure of the information sought by Kusar. If it does, then we must determine if such a disclosure would violate any protected right of privacy. Understandably, the parties assert opposing views on these two questions. As we conclude that the County's position is correct with respect to the first issue, we will not reach the second.

DISCUSSION

1. *Standard of Review and General Rules of Statutory Construction*

██ The construction and interpretation of a statute are questions of law which we necessarily consider de novo. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) The County properly brings this matter to our attention by a petition for an extraordinary writ.[8]

██ The fundamental rule of statutory construction is that the court ascertain the intent of the Legislature from an examination of the statute as a whole. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *Rice* v. *Superior Court* (1982) 136 Cal.App.3d 81, 86 [185 Cal.Rptr. 853].) We do this in order to be certain that our construction and application of the statute will effectuate the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) This process requires that we first look to the plain meaning of the words used and their juxtaposition by the Legislature (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1]); and we are bound to give effect to a statute according to the usual and ordinary import of those words. (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512].) We may not add to or alter those words in order to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Brown* v. *Superior Court* (1990) 224 Cal.App.3d 989, 992 [274 Cal.Rptr. 442].) However, if more than one reasonable construction of the statutory language is possible, then we should look at the legislative

---

[8]Section 6259, subdivision (c), provides in relevant part: ". . . an order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ."

history and other extrinsic aids to determine the legislative purpose[9] and adopt the construction which most closely serves it. (*Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d at p. 232; *People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378]; *Wilson* v. *Board of Retirement* (1959) 176 Cal.App.2d 320, 324 [1 Cal.Rptr. 373].)

### 2. *Properly Construed, the Scope of Section 6254, Subdivision (f)(1) and (f)(2), Is Limited to Disclosure of Contemporaneous Records of Current Police Activities*

The County argues that section 6254, subdivision (f) (1) and (2), authorizes disclosure only of *contemporaneous* information relating to persons *currently* within the criminal justice system and cannot be used to discover criminal history information going back 10 years. Kusar, on the other hand, contends that the language plainly directs disclosure of the requested information and the County may only avoid the statutory mandate by showing one of the two described exceptions,[10] which it has failed to do.

The language utilized in section 6254, subdivision (f), is consistent with the more narrow construction placed on it by the County. For example, "records" of complaints and investigations and "files compiled" by state and local agencies for correctional, law enforcement and licensing purposes are exempt from the general requirements of the Public Records Act. However, the second paragraph of subdivision (f) requires that the public have access to certain limited kinds of "information" extracted from such records and files. (*Williams* v. *Superior Court* (1993) 5 Cal.4th 337, 348, 360-361 [19 Cal.Rptr.2d 882, 852 P.2d 377].) This information is described in terms which strongly suggest that contemporaneous information is intended. The disclosed information must include (1) the "*current address*" of an arrestee, (2) the time and date of booking, (3) the location where the arrestee is then *currently* being held or, if not in custody, the time and manner of release, (4) the amount of bail set, (5) all charges on which the arrestee is *being held* and (6) any *outstanding* warrants or parole violations. This information is patently the type of information which would be relevant to current and contemporaneous police activity. Much of it would make no sense in the

---

[9]The County has requested that we take judicial notice of the legislative history materials contained in exhibits P and Q to its petition. That request is appropriate and the information is helpful. We therefore grant such request. (Evid. Code, §§ 452, subds. (b) and (c) and 459, subd. (a).)

[10]Under section 6254, subdivision (f), there are two specific exceptions. The information otherwise required need not be disclosed where it (1) would endanger the safety of a person involved in an investigation or (2) would endanger a successful completion of the investigation. The County does not contend that either of these exceptions is applicable.

context of a 10-year history of arrest activity. Indeed, if construed in any other way this new exception would come close to consuming the exemption contained in the first paragraph of subdivision (f).

■ Nevertheless, it would not be entirely unreasonable to construe the statutory language in the broad general manner proposed by Kusar. The statutory language alone does not conclusively eliminate an interpretation which would authorize the release at a later time of information which was "current" when compiled. We therefore conclude the language is ambiguous and it is necessary to look at additional factors to determine the purpose and intent of the statute.[11]

We begin with the legislative history. This legislation started out in the 1981-1982 Regular Session as Assembly Bill No. 909 (AB 909) and the history of that bill reflects that its purpose was to modify the then-existing statutory limitations on the disclosure of specified information in criminal complaints or law enforcement investigations. Up until that time such disclosure was restricted to the parties involved, insurance carriers or any person harmed during a particular incident.[12] It appears that the primary impetus for this proposed legislative change came from the California Newspaper Publishers Association. That group sought to expose to routine

[11]In a supplemental letter brief, Kusar directs our attention to the Supreme Court's recent opinion in *Williams* v. *Superior Court, supra,* 5 Cal.4th 337. In that case, the Supreme Court concluded there is no time limitation on section 6254, subdivision f's exemption for law enforcement investigatory files, in part because nothing in the language of the statute purports to impose such a limitation. (5 Cal.4th at p. 357.) Kusar argues that the Supreme Court's ruling compels a conclusion in this case that there is no limit on the requirement of subdivision (f)(1) and (f)(2) that certain arrest information be disclosed, because no such limitation is expressly provided. However, the County's contention is that language in those subdivisions respecting "current" data implies, if it does not expressly spell out, that the information contemplated is limited to current information. As we conclude the language is ambiguous, we turn to other factors to resolve the issue. If our consideration of such other factors establishes that the disclosure provisions apply only to contemporaneous information, our conclusion will not be something imposed upon or added to the statutory language. Rather, it will be a selection of one of two constructions to which the statutory language is reasonably susceptible.

[12]The digest prepared by the Governor's office, after AB 909 was passed and sent to his desk, summarized the legislation as follows:

"DIGEST

"*Existing law* requires local police agencies to disclose the following information from their investigation files to (1) persons involved in an incident, (2) authorized representatives of involved persons, (3) involved insurance carriers, and (4) any person suffering bodily injury or property damage as a result of the incident: [¶] 1) Names and addresses of persons involved in the incident. [¶] 2) Names and addresses of witnesses (other than confidential informants). [¶] 3) Description of any property involved. [¶] 4) Date, time, and location of the incident. [¶] 5) All diagrams. [¶] 6) Statements of the parties involved in the incident. [¶] 7) Statements of the witnesses (other than confidential informants). [¶] This information need not be disclosed,

access by any interested member of the public such *current* police agency records as "activity logs," "original entry" documents and police blotters as a means of permitting the public and the press to monitor local law enforcement.[13] This is confirmed by the comments on AB 909 contained in the report of the Senate Committee on the Judiciary (1981-1982 Reg. Sess.). In

however, if it would either endanger the safety of a witness or other person in the investigation or endanger the successful completion of the investigation or a related investigation.

"*As passed by the Assembly*, this bill: [¶] 1) Required that the specified disclosures be made to the 'public,' rather than to only those persons specified in existing law. [¶] 2) Expanded this disclosure requirement to include disclosure by the California Highway Patrol (CHP). [¶] 3) Provided that the description of property could be a 'general' description. [¶] 4) Deleted the statements of the parties involved in the incident from disclosure. [¶] 5) Excluded statements of victims from disclosure.

"*The Senate amendments:* [¶] 1) Deleted provision #1 above. [¶] 2) Further required state and local law enforcement agencies maintaining original entry documents compiled chronologically to make them available to the public, except to the extent that disclosure would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation. [¶] 3) Extended disclosure requirements to persons suffering bodily injury or property damage or loss as the result of larceny or vehicle theft. [¶] 4) Provided that nothing in this section requires the disclosure of that portion of those investigative files which reflect the analyses or conclusions of the investigating officer. [¶] 5) Double-joined this bill with SB 376 (Dills).

"FISCAL EFFECT [¶] State and local enforcement agencies could incur undetermined mandated costs to provide the specified information. These costs could be offset by fees allowed under existing law."

[13]Typical of the information included with the legislative history materials submitted to us was the following editorial comment on AB 909 which appeared in the San Francisco Chronicle of June 29, 1981:

"Anyone who believes that the public has a right to know as much as possible about what its protectors, the police, have been doing will support Assembly Bill 909, which will be heard before the Assembly Ways and Means Committee in Sacramento Wednesday morning. It is another of those 'sunshine laws' which have done so much to increase the availability of information about government in recent years.

"AB 909 would amend a section of the State Government Code known as the Public Records Act.

"While giving careful protection to the necessary security of police information which might endanger a witness or jeopardize the success of an on-going investigation, the measure would spell out in detail the kinds of information about criminal or accident cases which police, sheriffs and the California Highway Patrol would be required to make public. Such a measure is needed, we believe, because it codifies and makes specific that which has been governed by tradition and personal relationships in the past.

"Public access to police information, we will be the first to admit, is very largely a matter of day-to-day relationships between newspaper and broadcast reporters and detectives, jail booking sergeants and watch lieutenants. When those relationships are good, there is little problem.

"When the matter at hand deals with allegations of police misconduct, police mistakes or police coverups, the press may be hard put to do its job. And the public will certainly be hard put to learn about matters in which it has both interest and manifest right to know.

"The bill would go a long way to prevent misunderstandings by mandating release of certain police information while protecting both witnesses and sensitive investigations. We urge Bay Area members of the Assembly and Senate to give it their support."

explaining the need for this bill, the committee stated: "Police departments in most jurisdictions traditionally make available their station blotters and booking sheets for press review. Proponents note, however, that in recent years an aggressive attitude in reporting crime news has, in some instances, resulted in the closing of all records of police activity in apparent retaliation for critical press accounts in some cities. Cutting off press access to log sheets that record police activity on a chronological basis may hamper effective press reporting of criminal activity in a community. [¶] This bill would make express what proponents maintain is implied by common law tradition and the scope of the Public Records Act—that incident logs and booking sheets recording the daily investigatory and arrest activity of local police departments should be open in public inspection."

However, on or about September 10, 1981, the Governor vetoed AB 909 as too broad.[14] He invited both the press and law enforcement officials to work together "on mutually acceptable legislation that serves both the public safety and right to know." Assembly Bill No. 277 (AB 277), introduced in 1982, was the result and it was ultimately passed, signed by the Governor and became effective on January 1, 1983. It amended section 6254, subdivision (f) to read as it does now.

It seems obvious that the legislative history of AB 909 is directly relevant to our examination of this statute since AB 277 was the same bill except for modifications requested by the Governor's veto message on AB 909. Indeed, the legislative history of AB 277 itself is fairly modest, reflecting as it does that it is the compromise response to the veto of AB 909.[15] Our examination of that history persuades us that the County's construction of section 6254, subdivision (f) is the more appropriate one.

We believe that this 1982 legislation demonstrated a legislative intent only to continue the common law tradition of contemporaneous disclosure of individualized arrest information in order to prevent secret arrests and to mandate the continued disclosure of customary and basic law enforcement information to the press. It seems clear that the Legislature and

[14]In his veto message, the Governor stated: "I am returning AB 909 without my signature. [¶] I recognize the need for legislation to clarify what records law enforcement agencies should make public. However, this bill is overly broad and may force the disclosure of confidential information, deter citizens from fully cooperating with law enforcement officials and cause needless additional emotional trauma for victims. I call upon the press and the law enforcement leaders to work together next year on mutually acceptable legislation that serves both the public safety and right to know."

[15]A report to the Senate Republican Caucus of February 3, 1982, reported: "The language contained in this conference report relating to disclosure of information is a compromise. AB 909 (Goggin) of last year dealt with the same subject but contained language not acceptable to the District Attorneys. The bill was vetoed at their request."

the Governor both understood that AB 277 would require no departure from, but simply mandate, what had been basic and customary at common law and, indeed, what many law enforcement agencies were then doing as a matter of course.[16]

Our conclusion that the mandate of section 6254, subdivision (f)(1) and (f)(2) is limited to contemporaneous information is reinforced by the existence of other statutes which regulate the maintenance and disclosure of historical information of the kind sought by Kusar. In particular, sections 832.5, 832.7 and 832.8 of the Penal Code, together with sections 1043 through 1046 of the Evidence Code, impose rather careful restrictions upon the disclosure of information from records of citizen complaints against police officers. While Kusar's request is phrased as a request for arrest information, not as one for information regarding complaints against Bailey and Morales, there can be little doubt the ultimate purpose of the request is to discover indirectly information of the kind governed by these statutes.

Penal Code section 832.5 requires every state and local agency which employs peace officers to establish procedures to investigate citizen complaints against such officers, to make a written description of such procedures available to the public and to maintain records regarding all complaints for at least five years. Section 832.7 provides that peace officer personnel records and records maintained pursuant to section 832.5 are confidential and may be disclosed only through procedures provided in Evidence Code sections 1043 and 1046, except where disclosure is sought by a grand jury, district attorney's office or Attorney General's office. Section 832.8 provides that "personnel records" include records of the

---

[16]This conclusion is fully supported by the Enrolled Bill Report on AB 277 given to the Governor by his Legal Affairs Secretary on March 1, 1982. A relevant portion of that report states:

"*Police Records*

"Under present law, records of law enforcement agencies are expressly exempted from the Public Records Act. Last year, at the request of most law enforcement agencies, the Governor vetoed a poorly drafted bill which sought to open arrest information. In his veto message the Governor noted the need for legislation in this area, and during the interim recess our office called together the California Newspaper Publishers Association and the California Peace Officers Association to draft acceptable language.

"This bill will now require law enforcement officials to provide basic information about (a) all individuals who have been arrested and (b) all crimes reported and the agency's response. According to CPOA, the vast majority of their departments already provide such information as a matter of practice so the bill will not impose a significant new burden.

"Although some individual agencies still oppose supplying the public with information about the arrests they have made or the nature of their response to reported crimes, none of the departments now opposing the bill voiced any objection during our negotiations or when the bill was before the Legislature.

"Both portions of this bill provide good improvements to present law by increasing public knowledge and review of the criminal justice system."

investigation of complaints concerning a peace officer's performance of his or her duty.

Evidence Code section 1043 provides that peace officer personnel records and records maintained pursuant to Penal Code section 832.5 are discoverable by means of a noticed motion as described in Code of Civil Procedure section 1005, and upon a showing of good cause, including a showing that the information is material to the action in which it is sought. Section 1045 provides that nothing in the Evidence Code sections governing official information (Evid. Code, art. 9, §§ 1040-1047) affects a party's right of access to information relating to police misconduct, "provided that such information is relevant to the subject matter involved in the pending litigation." In determining relevance, a court must conduct an in camera review of the records, pursuant to Evidence Code section 915 and must exclude discovery of information more than five years old. Section 1046 provides that where discovery of peace officer information is sought in an action where it is alleged that an officer used excessive force in an arrest, a copy of the arrest report respecting the subject incident must be attached to the motion.

These statutes set forth detailed and careful procedures to assure that the sensitive information contained in records relating to allegations of police misconduct will be disclosed only upon a showing of manifest necessity. Such procedures would be nullified if, as Kusar argues, the same information, or information leading to it, could be obtained as a matter of right through the Public Records Act. Obviously, we cannot construe section 6254, subdivision (f), to require such a result. (Code Civ. Proc., § 1858; *Williams* v. *Superior Court, supra,* 5 Cal.4th at p. 357.)

Kusar tacitly concedes that the same information he now seeks was previously sought by discovery in the McMurray action, first through a motion to compel discovery and thereafter through a petition for a writ of mandate addressed to this court. He further admits discovery was *denied* each time. The record in this action does not reveal the reason for the denial, but it is reasonable to infer it resulted from the failure to meet the standards of good cause required by Evidence Code sections 1043 and 1045, which would have necessarily determined the outcome of the request. Section 6254, subdivision (f), simply cannot be construed in a way that authorizes the circumvention of rulings of a court made pursuant to important discovery statutes protecting the confidentiality of law enforcement information.[17]

Finally, we cannot ignore the financial aspect of the requested disclosure. As we have noted above, section 6254, subdivision (f) does not authorize the

---

[17]After briefing was completed in this case, our Supreme Court filed its opinion in the case of *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363 [20 Cal.Rptr.2d 330, 853 P.2d 496], in which the court suggests that section 6254, subdivision (b) may preclude the release of the

release of "records" and "files" containing the information sought by Kusar, but only of "information" extracted from the records. (*Williams* v. *Superior Court, supra*, 5 Cal.4th at pp. 348, 360-361.) This means that to comply with Kusar's request, the sheriff's department not only must retrieve records and files going back many years, but must itself extract from those records and files the information requested, rather than merely duplicating certain records and turning them over to Kusar.

The record before us reflects that to generate, copy and disclose the requested information would impose a substantial financial burden on the sheriff which he does not have the budget authority to incur. Yet the Legislature (§ 6257) has provided only for recovery of *duplication costs* by the law enforcement agency involved. This is a restriction which is both reasonable and appropriate where the mandatory disclosure is limited to current records of contemporaneous activity, but totally unreasonable and inappropriate where both generation and compilation of information from historical archives is required.

## CONCLUSION

Based on the legislative purpose and intent which we glean from the legislative history, we conclude that the records to be disclosed under section 6254, subdivision (f)(1) and (2), are limited to current information and records of the matters described in the statute and which pertain to contemporaneous police activity. We therefore reject the broad construction of the statute advocated by Kusar and necessarily adopted by the trial court in the making of its order.

---

information at issue here. Subdivision (b) prohibits the disclosure of "[r]ecords pertaining to pending litigation to which the public agency is a party . . . until the pending litigation . . . has been finally adjudicated or otherwise settled." In *Roberts*, the Supreme Court quoted with approval from a law review article, which interpreted the subsection as " '. . . primarily designed to prevent a litigant opposing the government from using the [Public] Records Act's disclosure provisions to accomplish earlier or greater access to records pertaining to pending litigation or tort claims than would otherwise be allowed under the rules of discovery. . . .' " (*Roberts, supra*, at p. 372, quoting from Note, *The California Public Records Act: The Public's Right of Access to Governmental Information* (1976) 7 Pacific L.J. 105, 131.) This, of course, is what Kusar and Gould tacitly admit they are attempting to do.

The County also argues that disclosure of the kind of information sought by Kusar is prohibited by section 6254, subdivision (c), which proscribes the release of "[p]ersonnel, medical, or similar files, *the disclosure of which would constitute an unwarranted invasion of personal privacy*." (Italics added.) The County argues that the federal courts have construed 5 United States Code section 552(b)(7) (which exempts from the federal Freedom of Information Act police files which would invade personal privacy) to foreclose discovery of historical arrest data on·grounds that it would violate the privacy of the arrestees.

As we conclude section 6254, subdivision (f), *does not authorize* disclosure of the information sought by Kusar, we need not reach the issue of whether subdivision (b) or subdivision (c) prohibits it.

As we conclude that the statute does not require the broad disclosure of information required by the trial court's order, and issue our writ on that basis, we need not reach or discuss the other arguments raised by the County, including the broad questions relating to privacy invasion.

## DISPOSITION

The alternative writ is discharged and the stay order of February 10, 1993, is vacated. Let a peremptory writ issue commanding the trial court to vacate its order of November 17, 1992, and to issue a new and different order denying Kusar's motion to compel disclosure; the trial court shall then conduct such further proceedings in this matter as are appropriate and consistent with the views expressed herein.

Klein, P. J., and Kitching, J., concurred.