[No. D016698. Fourth Dist., Div. One. Mar. 10, 1994.]

NORTH COUNTY PARENTS ORGANIZATION FOR CHILDREN
WITH SPECIAL NEEDS, Plaintiff and Appellant, v.
DEPARTMENT OF EDUCATION, Defendant and Respondent.

**COUNSEL**

Charles Wolfinger for Plaintiff and Appellant.

Joseph R. Symkowick, Roger D. Wolfertz and Carolyn Pirillo for Defendant and Respondent.

## OPINION

**FROEHLICH, J.**—The issue in this case is whether the California Department of Education (Department) is entitled to charge its full cost of providing copies of public documents which are requested in accordance with the California Public Records Act. (Gov. Code,[1] § 6250 et seq.)

North County Parents Organization for Children With Special Needs (appellant) is a nonprofit tax-exempt corporation which provides advisory services to parents of children with disabilities. Appellant assists such parents in enforcing their rights to special educational services provided by state and federal laws. Parents seeking review of local school district action respecting such services may take advantage of an appellate hearing process. The decisions resulting from this process are public records maintained by the Department.

Appellant requested copies of all decisions rendered in the last two years. Department charged $.25 per page for furnishing the copies, rendering a total bill of $126.50. This charge not only covered the cost of duplication of the documents, but also reimbursed Department for staff time involved in searching the records, reviewing records for information exempt from disclosure under law, and deleting such exempt information. Department refused to reduce this charge, and also refused to waive the charge upon the ground that "there is no legal authority to waive such charges." Appellant paid the charge and then brought this action seeking miscellaneous relief.

The trial court ruled for the Department, finding that section 6257 permits the Department to charge "the full direct costs of duplication," and that the Department's charge of $.25 per copy "was not in contravention of section 6257." The court made a second ruling pertaining to the potential of waiver of fees. It ruled that the Department had discretion to waive fees pursuant to section 6253.1, but that it was not required to waive fees and did not err in this case by refusing to consider waiver. Appellant contends both rulings are in error.

■ We agree with appellant. Section 6257 provides that one who requests copies of public documents must pay the statutory fee for same, if

---

[1]All statutory references are to the Government Code unless otherwise specified.

there is one. The parties agree there is none prescribed in this case. Lacking a statutory fee the cost chargeable is a "fee[ ] covering direct costs of duplication." There seems to be little dispute as to what "duplicate" means. It means just what we thought it did, before looking it up: to make a copy. (See Black's Law Dict. (4th ed. 1968) p. 593 ["to . . . reproduce exactly"]; Webster's Third New Internat. Dict. (1981) p. 702 ["to be or make a duplicate, copy or transcript . . ."].) Since words of a statute are to be interpreted "according to the usual, ordinary import of the language employed in framing them" (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500]), we conclude that the cost chargeable by the Department for furnishing these copies is the cost of copying them.

There is no disagreement with the proposition that the Department was put to a great amount of trouble responding to appellant's request, much of which had nothing to do with copying. Records were searched, documents were read for any material to be excised, such material was removed, files were refiled, etc.

We sometimes presume too much of the Legislature, but this is assuredly not the case when we presume that the statute writers, themselves bureaucrats of a sort, knew the ancillary costs of everything government does. They specified, however, that the sole charge should be that for duplication. In order to clarify this limitation the Legislature added that the fee should be the "direct cost" of duplication. Obviously to be excluded from this definition would be "indirect" costs of duplication, which presumably would cover the types of costs the Department would like to fold into the charge.

The parties to this appeal argue earnestly about the policy considerations which should go into this momentous decision (whether to charge $.10 or $.25 per copy). We do not reach these arguments. Clearly the Legislature could have provided a different charge for copying. It simply did not, and the reason it did not is of no moment to the Court of Appeal, a body which simply interprets statutes and does not ordinarily seek their rationale.

However, if our quick conclusion needs any bolstering it is easy to find in the statutory history of this fee-setting provision. The original wording, adopted in 1968 (Stats. 1968, ch. 1473, § 39, p. 2948), was that "a reasonable fee" could be charged. In 1975 an amendment limited the "reasonable fee" to not more than $.10 per page. (Stats. 1975, ch. 1246, § 8, p. 3212.) An amendment in 1976 deleted "reasonable fee" and inserted instead "the actual cost of providing the copy." (Stats. 1976, ch. 822, § 1, p. 1890.) Finally, the present version of the statute was adopted in 1981 limiting the fee to the "direct costs of duplication." (§ 6257.) Thus it can be seen that the trend has

been to limit, rather than to broaden, the base upon which the fee may be calculated. A "reasonable fee" or the "actual cost of providing the copy" could be interpreted to include the cost of all the various tasks associated with locating and pulling the file, excising material, etc. When these phrases are replaced by the more restrictive phrase "direct costs of duplication," only one conclusion seems possible. The direct cost of duplication is the cost of running the copy machine, and conceivably also the expense of the person operating it. "Direct cost" does not include the ancillary tasks necessarily associated with the retrieval, inspection and handling of the file from which the copy is extracted.

We apprehend that the court's second ruling was also in error. It may be thought that the error was either inadvertent or insignificant. However, being called upon herein to right wrongs which might seem inconsequential to most, we complete our task by identifying this one. As stipulated by the parties, the Department refused to waive fees because it determined there was no legal authority to do so. The trial court, to the contrary, concluded that the Department *did* have the power to waive fees, citing section 6253.1. This section gives an agency power to "adopt requirements for itself which allow greater access to records than prescribed by the minimum standards set forth in this chapter." The trial court apparently concluded that this provision permits an agency to waive or reduce its fees. We agree. A reduction in copy fee permits "greater access" to records.

The trial court then, however, found no obligation to reduce the fee and hence no actionable wrong by the Department. Our difficulty with this ruling is that it ignores the fact that the Department declined to exercise discretion, contending it had none. Had the Department been aware that it was vested with discretion to reduce the fee, it might have done so. We believe, therefore, that the case should be returned to the Department with instructions to consider (but not necessarily to grant) the request for fee waiver.

Section 6258 provides: "Any person may institute proceedings for injunctive or declarative relief or writ of mandate . . . to enforce his or her right to inspect or to receive a copy of any public record . . . ." This lawsuit clearly comes within this provision, and hence appellant's requests for writs, orders and declarations are proper. We decline, however, to grant such specific relief. As indicated by the general counsel, the Department will surely follow the law once it is advised of it. Appellant is entitled to a declaration of its right to obtain copies at a cost of only the expense of copying, and it is also entitled to our advice that the Department could waive this fee if it chose to do so. By this opinion we have granted these declarations. Appellant is also entitled to a refund of some portion of the fee it has already paid,

and also to costs both at trial and appellate level. The statute (§ 6259, subd. (d)) contains authority for an award of attorney fees to appellant. All these matters are best determined by the trial court, assuming (which we would expect is a false assumption) that the parties cannot now resolve their dispute by stipulation.

## DISPOSITION

We reverse the judgment of the trial court and remand the case for further proceedings in accord with this opinion.

Work, Acting P. J., concurred.

**HUFFMAN, J.,** Concurring and Dissenting.—Although I agree with the majority that Government Code section 6253.1[1] provides a public agency with the discretion to make fee waivers in appropriate cases, I respectfully dissent from the conclusion of the majority regarding the scope of the statutory term "direct costs of duplication." (§ 6257.) Although the monetary amount involved in this appeal is small, the question presented as to allocation of the direct costs of duplication of public records between requestors of such records or the taxpayers is of material importance in this era of straitened public finances. Interpreting section 6257 de novo within the context of the Public Records Act (§ 6250 et seq.) (the Act) and on the record presented, I would conclude that the statutory term "direct costs of duplication" was intended by the Legislature to include not only the actual per page copying cost, but also the costs directly resulting from the acts necessary to prepare the public record material to make it available to the requesting party in an appropriate form. Such preparation may, in my view, include the tasks directly related to duplication, such as searching for appropriate records, "sanitizing" or redacting the material to segregate out statutorily exempt information, and then providing the public records in a prepared form.

A few more facts than those set forth by the majority are helpful to an understanding of my position on this issue. Respondent California Department of Education (the Department) is the state agency responsible for ensuring that local school districts provide appropriate special education services. As part of its duties, the Department conducts administrative hearings on appeals by parents contesting local school district decisions about their children's rights to special education services. North County Parents Organization for Children with Special Needs (Appellant), a nonprofit corporation and association of parent volunteers, requested copies of

---

[1]All statutory references are to the Government Code unless otherwise specified.

all decisions issued in such administrative hearings during 1987 and 1988, a two-year period.[2]

In response to Appellant's request, the Department assigned a staff analyst to reply to the request by searching individual case files for the hearing decisions, reviewing them for information exempt from disclosure under the Act (names of students and parents), deleting the names and copying decisions, and then refiling the original decisions. The Department then sent Appellant the requested copies of decisions with a bill for $126.50, based on the rate of 25 cents per page for 506 pages. Appellant paid the charge under protest, asking the Department either to reduce the charges to 10 cents per page or to waive them altogether because Appellant is a nonprofit group using the decisions to provide free advice to parents about their rights under applicable special education laws. The Department responded that the charges covered staff costs for locating the records (two hours), reviewing the records for exempt information and then deleting it (one and one-half hours), and then copying the five hundred six pages twice, once from the original and once with the whited-out or "sanitized" copy (three hours). Costs for operating the copy machines and for postage were also incurred.

Section 6257 provides as follows: "Except with respect to public records exempt by express provisions of law from disclosure, each state or local agency, upon any request for a copy of records, which reasonably describes an identifiable record, or information produced therefrom, shall make the records promptly available to any person, *upon payment of fees covering direct costs of duplication, or a statutory fee, if applicable.* Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt by law." (Italics added.)[3] The trial court gave broad scope to the fees provision of this section by ruling the Department was permitted to charge parties requesting records "the full direct costs of duplication." Review of this determination, according to rules of statutory interpretation, involves the resolution of a question of law de novo on appeal. (*Shippen* v. *Department of Motor Vehicles* (hereafter *DMV*) (1984) 161 Cal.App.3d 1119, 1124 [208 Cal.Rptr. 13]; *Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384 [237 Cal.Rptr. 920].) Although construction of

---

[2]Appellant had made a similar request for a one-and-one-half-year period earlier, and had been provided a copy of four decisions (twenty pages in total), for which the Department charged no fee. Appellant then requested copies of all hearing decisions from other nearby school districts for a three-year period, and was told a representative should come to Sacramento to inspect and select the decisions needed, copies of which would then be provided at the rate of ten cents a page. Appellant declined to take this route, based on the cost of travel and because the 10-cent-per-page charge was excessive in its view.

[3]It is agreed that no statutory fee applies to this case.

statutory language is unnecessary where the language is clear and unambiguous, rules of statutory interpretation must be applied where there is ambiguity or conflict in the statutory language, or where a literal construction would lead to absurd results. (*DMV, supra,* at p. 1124.) The statutory term "direct costs of duplication" is subject to more than one interpretation and must be considered ambiguous.

"Accordingly, we are compelled to engage in statutory construction, giving words their usual, ordinary, and common sense meaning based on the language the Legislature used and the apparent purpose for which the statute was enacted. [Citation.] We '. . . ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*DMV, supra,* 161 Cal.App.3d at p. 1124.)

Stated differently, statutory language must be construed in context, keeping in mind the statutory purpose, and statutory enactments relating to the same subject must be harmonized to the extent possible. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Ibid.*) Further, " ' ". . . the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used." ' [Citations.]" (*Id.* at p. 1391, fn. 14.)

The majority reads section 6257 according to the "usual, ordinary import" of its language (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500]), without benefit of citation of authority or much in the way of explanation. I believe some background of interpretation of the Act is of assistance in this statutory interpretation question. Appellant relies on *American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440, 451-453 [186 Cal.Rptr. 235, 651 P.2d 822] (hereafter *ACLU*), in which the Supreme Court recognized that under section 6255 of the Act, an agency's costs for reviewing and deleting exempt information from records are a burden which may be taken into account in requiring disclosure of records. Section 6255 creates a balancing test by which an agency can justify nondisclosure of requested records by showing "that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

Although neither party in the case before us has presented the issue as requiring a section 6255 balancing test, the general principles of *ACLU,*

*supra*, 32 Cal.3d 440 may be applied here; we are required to read related statutory enactments as a whole. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d at p. 1387.) Section 6255 "imposes on the California courts a duty . . . to weigh the benefits and costs of disclosure in each particular case." (*ACLU, supra*, at p. 452.) A court performing this balancing test is authorized to take into account any expense and inconvenience involved in segregating nonexempt from exempt information, because the statutory term "public interest" "encompasses public concern with the cost and efficiency of government." (*Id.* at p. 453, also see fn. 13, p. 453.) We may thus take it as established that the Act includes a policy favoring the efficiency of government and limitation of its costs.

Moreover, although the evident purpose of the Act is to increase freedom of information by giving the public maximum access to information in the possession of public agencies (*CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 651-652 [230 Cal.Rptr. 362, 725 P.2d 470]), such access to information is not unlimited under the Act. For example, section 6254 et seq. defines a number of categories of information that are exempt from disclosure; requests for records are subject to those constraints. The Act thus places both substantive and some financial constraints upon disclosure of public records. (See *ACLU, supra*, 43 Cal.3d at p. 451; *State Bd. of Equalization* v. *Superior Court* (1992) 10 Cal.App.4th 1177, 1191 [13 Cal.Rptr.2d 342].)

I would read the language of section 6257 referring to the "direct costs of duplication" with this background in mind. To effectuate the purpose of the statute, according to the intent of the Legislature, a court is required to look first "to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d at pp. 1386-1387.) The fee provisions of section 6257 are activated by "any request for a copy of records, which reasonably describes an identifiable record, or information produced therefrom, . . ." (§ 6257.) Upon such a request, the agency must make the records promptly available to any person, with the proviso that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt by law." Thus, there are two clauses in this statute suggesting that public records must in some cases be edited or otherwise prepared before being made available to the requestor: (1) The records may consist of information produced from an identifiable record, and (2) nonexempt information may be provided in the form of any reasonably segregable portion of

the records. The Legislature thus showed it was aware that there might be a need for preparation of records (search, review, and deletion) before they could be made appropriately available to the requestor, and that accompanying costs would be incurred. Such costs might be considerable, for example, if the requested material contained privileged personnel matters or litigation-related documents. (See § 6254, subds. (b), (c), (k).) I see no reason to assume that the Legislature intended that in all nonwaiver (§ 6253.1) cases, taxpayers, rather than requesting parties, should bear the full direct costs of duplicating copies of public records under the Act.

Where statutory language is uncertain or ambiguous, "consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) The financial consequences of Appellant's position are potentially considerable in this era of public agency budget deficits. I believe that the Legislature's references to the "information produced" from a record and the "reasonably segregable portion" of records which may be produced show that in this context, the Legislature intended that the meaning of the word "duplication" should be enlarged by reference to the object of the whole clause in which it is used. (*Id.* at p. 1391, fn. 14.) It thus should include the tasks directly related to duplicating the material as prepared for release, in accordance with the limitations imposed by the Act.

Dicta in a recent opinion by the Second District, Division Three, in *County of Los Angeles* v. *Superior Court* (1993) 18 Cal.App.4th 588, 600-601 [22 Cal.Rptr.2d 409], suggest that in section 6257, the Legislature "has provided only for recovery of *duplication costs* by the . . . agency involved. This is a restriction which is both reasonable and appropriate where the mandatory disclosure is limited to current records of contemporaneous activity, but totally unreasonable and inappropriate where both generation and compilation of information from historical archives is required." (18 Cal.App.4th at p. 601.) I find support for my position on section 6257 in this quoted language, since selecting and preparing the records requested by Appellant for disclosure required someone to compile those records and then edit them for disclosure. Such preparation was directly related to duplicating and making the copies available and was not free of agency expense.

Moreover, for purposes of interpreting the fee provision in section 6257, it is not proper to place too much weight upon the identity of the requestor of the documents. The Act does not differentiate among those who seek access to public information (e.g., a requestor who is a commercial entity, intending to use the material obtained for commercial purposes, and a private party

who seeks public information). (*State Bd. of Equalization* v. *Superior Court, supra,* 10 Cal.App.4th at p. 1190.) In *State Bd. of Equalization,* the court refuted any interpretation of the Act which would give less deference to commercial users, as opposed to private parties, and adhered to its previous statement in *DMV, supra,* 161 Cal.App.3d at pages 1126-1127 that access to bulk records by commercial users may be circumscribed by reasonable conditions regarding format and price. (*State Bd. of Equalization, supra,* 10 Cal.App.4th at p. 1191.) I believe that an interpretation of "direct costs of duplication" as including directly related search, compilation, review, and deletion expenses is consistent with the principles of *State Bd. of Equalization,* as allowing access to public records to be circumscribed in appropriate instances by reasonable conditions regarding format and price. I therefore dissent from the majority opinion on this point.

A petition for a rehearing was denied March 31, 1994, and respondent's petition for review by the Supreme Court was denied May 19, 1994.