Filed 1/16/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FARHAD FREDERICKS, | D066229 |
| Petitioner, | (Super. Ct. No. 37-2013-00070216-CU-WM-CTL) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| CITY OF SAN DIEGO, et al., | |
| Real Parties in Interest. | |

Proceedings in mandate from an order of the Superior Court of San Diego County.

Ronald S. Prager, Judge. Petition granted with directions.

Salaami Firm and Ehson Salaami for Petitioner.

Jan I. Goldsmith, City Attorney, Mary T. Nuesca, Assistant City Attorney, Paige E. Folkman and Michael T. Phelps, Deputy City Attorneys for Real Parties in Interest.

Katielynn B. Townsend; Davis Wright Tremaine, Kelli L. Sager for Reporters Committee for Freedom of the Press; Terry Francke for Californians Aware; Jim Ewert

for California Newspaper Publishers Association; David Bralow for Digital First Media; Peter Scheer, First Amendment Coalition; Jeffrey Glasser for Los Angeles Times; Karole Morgan-Prager and Juan Cornejo for The McClatchy Company, as Amici Curiae on behalf of Petitioner.

This petition presents novel issues of law regarding a request made under the California Public Records Act (Gov. Code,[1] § 6250 et seq.; CPRA), for disclosure of "information" found in "complaints or requests for assistance" that were received by a local law enforcement agency, over a specified time period.  (§ 6254, subd. (f)(2).)  We also address questions about the allowable copying and ancillary costs to be charged for inspection, review, or production of such information.  (§§ 6253, subds. (a), (b); 6253.9, subd. (b).)

Petitioner Farhad Fredericks made a CPRA request to defendant and real party in interest, the City of San Diego and the San Diego Police Department (the Department), for all "complaints and/or requests for assistance" made to the Department during a six-month period (180 days), pertaining to burglary and identity theft.  (Pen. Code, §§ 459, 530.)  In response to the request, the Department notified Fredericks that its investigation reports ("Incident History Reports") are exempt from disclosure under the CPRA, but it would provide him with redacted, summarized information in its relevant "Calls for Service" reports (e.g., deletion of names of victims), but only about incidents that had occurred during the 60 days before the date of the request.  If he continued to seek the

_____

[1]     All further statutory references are to the code unless otherwise noted.

2

Incident History Reports for the same period, they would be provided in redacted form, conditioned on payment of costs of $65 per hour for staff preparation costs, plus a $0.25 charge per page disclosed.

In response, Fredericks filed a petition for writ of mandate in the trial court to challenge the Department's incomplete compliance with his request. He first acknowledged that under section 6254, subdivision (f), "any investigatory or security files compiled by any . . . state or local agency for correctional, law enforcement, or licensing purposes" are exempt from disclosure. However, Fredericks contends that he, as a member of the public, was entitled under section 6254, subdivision (f)(2) to receive all the information requested from such complaints and/or requests for assistance, for the time period he specified, and that his inspection and review of the information should be provided without charge other than the direct cost of duplication. (§ 6253, subd. (b).)

The trial court denied the petition, reasoning that the CPRA only requires the Department to provide information relating to current or "contemporaneous" police activity. (*City of Los Angeles v. Superior Court* (*Kusar*) (1993) 18 Cal.App.4th 588, (*Kusar*) [construing previous versions of § 6254, subds. (f)(1), (2)].)[2] The trial court acknowledged the CPRA does not define "contemporaneous," as that term of art is used in the *Kusar* decision. However, the court ruled that Fredericks's request for six months

_____

[2] Section 6254, subdivisions (f)(1) and (f)(2) were amended in 1995, in relevant part, to remove certain language requiring production of "current" address information about arrestees or victims, as will be discussed in pt. IV, *post.* (Stats. 1995, ch. 778, §§ 1-3, pp. 6056-6081.)

of information, going beyond the 60 days of Calls for Service reports already provided, was excessive on its face. The court found it unnecessary to address the issues of privacy rights or burdensomeness of production. The written order and judgment included a finding that the Department was justified in charging duplication costs for production of records of contemporaneous activity.

In construing such disclosure requests, the policy of the CPRA requires the courts to consider the information that is being requested, not only the precise type of records that must be provided. (*Haynie v. Superior Court* (2001) 26 Cal.4th 1061, 1072 (*Haynie*); *Williams v. Superior Court* (1993) 5 Cal.4th 337, 348-349 (*Williams*).) Pursuant to section 6254, subdivisions (f)(1) and (2), even if a requested record (e.g., an investigatory file) is exempt from disclosure, a law enforcement agency may be required to produce to the public the information listed in those subparts (e.g., the "substance" of complaints or requests for assistance, and any recorded description of the "factual circumstances surrounding the crime or incident"). (*Williams*, *supra*, at pp. 360-361.)

A "catchall exemption" in the CPRA is set forth in section 6255, subdivision (a), providing that even if a public agency cannot justify the withholding of its records by demonstrating that an applicable statutory exemption applies, the agency will be allowed to make a showing about whether " 'on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (*Williams*, *supra*, 5 Cal.4th at p. 347, fn. 9.)

In this original proceeding, we initially address the interpretation of section 6254, subdivision (f)(2), about the temporal and substantive scope of disclosure that a local law

4

enforcement agency must make under the CPRA, as follows: (1) Whether the Department adequately responded to the request by supplying its summary Calls for Service reports, in light of any applicable exemptions from disclosure of records or information; and (2) whether the Department was justified in denying Fredericks the requested access to information from "complaints and/or requests for assistance" that was more than 60 days old, that it categorized as "historical" in nature.

This record requires us to address not only the claims about specific exemptions from disclosure, but also related questions about the reasonableness of a given set of requests and responses in the context of the costs ruling. Under section 6253, subdivision (b), subject to any applicable exemptions, an agency has the duty to respond to "a request for a copy of records that reasonably describes an identifiable record or records . . . ." The agency shall make such records available "upon payment of fees covering direct costs of duplication, or a statutory fee if applicable." (*Ibid.*) An exact copy shall be provided unless impracticable to do so. (*Ibid.*)[3] We address whether the trial court

---

[3] Section 6253, subdivision (a) provides, "Public records are open to *inspection* at all times during the office hours of the state or local agency and every person has a right to *inspect* any public record, except as hereafter provided. Any reasonably segregable portion of a record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law." (Italics added.) Section 6253, subdivision (b) allows copying charges for direct costs of duplication. Section 6253, subdivision (c) allows an agency to determine whether the request, in whole or in part, seeks copies of disclosable public records in its possession, and to make them available within 10 days from receipt of the request, unless more time is needed for reasonably necessary efforts to be made to properly process the particular request (extension by written notice). Subdivision (d) of section 6253 then provides: "Nothing in this chapter shall be construed to permit an agency to delay or obstruct the inspection or copying of

correctly concluded that the Department could properly require Fredericks to pay specified staff preparation costs for any further information to be provided, such as the Incident History Reports in a redacted form. (See *North County Parents Organization for Children With Special Needs v. Department of Education* (1994) 23 Cal.App.4th 144, 146-147 (*North County Parents Organization*) [allowable direct costs of duplication under § 6257 (predecessor of § 6253) do not include ancillary tasks of retrieval, inspection and handling of files]; however, since 2000, § 6253.9, subd. (b) has permitted allocation of additional costs for production of information in an electronic format.)

The trial court resolved all issues in the petition mainly in reliance on *Kusar, supra*, 18 Cal.App.4th 588, which deals with a former version of the statute and distinguishable factual circumstances. We conclude the trial court's narrow construction of the Department's disclosure duties under the CPRA is incorrect both as to the substantive and temporal limits placed upon them. Section 6254, subdivision (f)(2) must be read according to its plain terms, and these terms do not include an express time limitation on production of only "contemporaneous" or "current" records. To properly implement the statutory terms, the trial court was required to focus on additional relevant criteria in performing an appropriate balancing of interests under section 6255, with regard to not only production of further nonexempt information described in section 6254, subdivision (f)(2), but also the reasonable costs of production. (§§ 6253, subds. (b), (c); 6253.9, subd. (b).) We grant the petition and direct the trial court to allow such

public records." Section 6253, subdivision (e) generally allows an agency to make policies that go beyond its statutory disclosure duties.

6

appropriate further proceedings as will determine the reasonable and appropriate levels of disclosures and the allowable costs, according to the principles set forth in this opinion.

I

*BACKGROUND*

A.  Request and Response

On August 20, 2013, Fredericks emailed a CPRA request to the Department. Under section 6254, subdivision (f)(2), he sought information about all "complaints and/or requests for assistance" pertaining to burglary and identity theft for a six-month period, for the entire City of San Diego area which the Department served.  Fredericks was seeking details including the time, date, and location of the reported occurrences, the time and date of the reports, the name and age of the victims, and the factual circumstances surrounding the incidents.  His request asked when the identified records could be "viewed and inspected."

In its letter of response dated August 23, 2013, the Department told Fredericks that in obtaining such information, it uses the procedure of having its officers in the field prepare records called Incident History Reports, which are generated from the responding officers; computer data identifying reporting parties and witnesses, and are thus created before further investigations into that data have taken place.  Next, the Department prepares reports called Calls for Service that are digests of such Incident History Reports. Calls for Service reports include the following information in table form, organized according to a particular reported offense (here, burglary [Pen. Code, § 459] or identity

7

theft [Pen. Code, §530]), an incident number, a date and time of the report, a location, the police beat number, and a code for the disposition (e.g., "A" for arrest, etc.).

Next, the information provided by the Calls for Service reports includes the amount of time spent by the responding officer, which is designated OST ("Out of Service Time" for the responder). The columns on the Calls for Service reports that list information about the reporting party and his or her telephone number are redacted. Due to the early stage of the investigation, it is not clear from the materials in the record whether the reporting party is necessarily the same as the victim of the reported offense.

In reliance on *Kusar, supra,* 18 Cal.App.4th 588, the Department took the position that since its Calls for Service reports were derived from officer-prepared Incident History Reports that were contemporaneous with the service calls, it was required to supply information only for a 60-day period, and its policy was to characterize any older records as "historical" in nature. The Calls for Service reports included the time, date, and location of the service request, and the Department took the position that it could not produce additional information such as names of potential victims of the incidents, due to privacy concerns and to avoid endangering the successful completion of an investigation, or the safety of any witnesses or victims. (§ 6254, subd. (f); *Williams*, *supra*, 5 Cal.4th at p. 349.)[4]

_____

[4]     Section 6254, subdivision (f)(2) requires the Department to disclose information regarding "all complaints or requests for assistance received by the agency," although it may on request withhold the names of victims in reports involving an enumerated list of crimes (many of them sex offenses). (See discussion regarding similar problems with

8

The Department then told Fredericks that if he wanted more information, such as the Incident History Reports, he would have to pay $65 per hour for "fully loaded" labor costs of printing and redaction of victims' names and contact information, plus $0.25 per page for each requested copy, per incident.[5]

### B. Petition and Trial Court Hearing

This action for mandamus and declaratory relief seeks an order to compel the Department to produce further "information" as requested. In its opposition, the Department provided a declaration from its police officer Jericho Salvador, who acts as its CPRA liaison with the public. He explained the derivation of the Calls for Service reports from the Department's officers' computerized Incident History Reports, and he stated that neither of them identifies a victim, but only reporting parties and witnesses (owing to the very preliminary stage of the investigation). Incident History Reports themselves can only be viewed in the Department's computer system, which unavoidably contains confidential information such as witness and reporting party information.

On Fredericks's request for burglary complaints to police, Officer Salvador located 382 incidents and provided him with 60 days of Calls for Service reports. On Fredericks's request for identity theft complaints, he located 712 incidents and provided him with 60 days of such Calls for Service reports.

disclosure of victim information on offenses that are potentially related to burglary or identity theft, e.g., Pen. Code, §§ 220, 646.9, pt. IV.D, *post*.)

[5]     We shall discuss section 6253 provisions dealing with charges for reproduction of records, with respect to the costs issues in part V, *post*.

Officer Salvador's declaration states that if he were to provide the underlying Incident History Reports, they would first have to be reviewed and redacted to remove witness or reporting party information, and then copied as modified. For the current 60-day request for information, it would take over two full work weeks to complete that redaction task (or six weeks if the requested 180-day period were allowed).

Further, because of the lack of designation in the Incident History Reports of "victims," the officer stated that he would need to contact the individual officers involved in each case, tell them who the requestor (Fredericks) is, and ask them whether the release of such information would endanger the investigation or witnesses. The reason given was that if any of these incidents reported as burglary (Pen. Code, § 459) or identity theft (Pen. Code, §530) were eventually determined to have constituted alternative Penal Code offenses (e.g., Pen. Code, § 220, assault with sexual intent during a burglary; or Pen. Code, § 646.9, stalking), then additional protections from disclosure would need to be provided (because such "victims" of Pen. Code, §§ 220 or 646.9 are specified in § 6254, subd. (f)(2) as being entitled to have their names withheld from any disclosures under the CPRA). Otherwise, disclosure of such information would violate a victim's right of privacy. The officer estimated that for him personally to perform such additional review and redacting of 60 days' worth of Incident History Reports (to obtain additional "victim" information about those specified offenses), it would take about six months of work days to complete the redacted disclosures (or 18 months for a 180-day request period).

In reply, Fredericks filed a declaration stating that he invests in local real property and is interested in his family's and others' safety in the community, and he was seeking such documents to make investment decisions and make sure his family is safe.

At the hearing, the trial court inquired why Fredericks chose this method to seek information about "high crime areas," since there were other methods of doing so. The court commented that Fredericks's motivations were somewhat "suspect," and that the breadth of the request had made it difficult for the Department to fully comply. (But see § 6257.5, stating that the CPRA chapter "does not allow limitations on access to a public record based upon the purpose for which the record is being requested, if the record is otherwise subject to disclosure.") The court seemed to suggest that if a shorter period of time had been covered by a more focused request, the Department could become obligated to work further with Fredericks to explain its view that whatever documents it was willing to provide should be adequate. (See § 6253.1 [agency duty to assist in formulating request].)

The trial court denied the petition. In the written ruling, the court relied on *Kusar, supra*, 18 Cal.App.4th 588 for the concept that only "current" information was required to be disclosed, pertaining to "contemporaneous" police activity. The trial court noted that the statute does not specifically delineate what period of time is encompassed by the term contemporaneous, but it relied on language in a recently issued appellate case to suggest that regional police departments customarily provide only 30- to 60-day-old information. (*MinCal Consumer Law Group v. Carlsbad Police Dept.* (2013) 214 Cal.App.4th 259

11

(*MinCal*).)[6] The trial court further concluded it was unnecessary to address any issues of privacy rights or burdensomeness, under its definition of contemporaneous as applied to this request.

The trial court relied on a constitutional amendment known as Proposition 59, affecting the disclosure of public records, in concluding that *Kusar, supra,* 18 Cal.App.4th 588 was still good law for its interpretation of section 6254. (Cal. Const., art. I, § 3, subd. (b)(2).)[7] The court reasoned that this constitutional provisions keeps in effect all existing CPRA authorities, and *Kusar* is an existing authority. (See *Shapiro, supra,* 134 Cal.App.4th 170, 181, fn. 14; see *American Civil Liberties Union of Northern California v. Superior Court* (2011) 202 Cal.App.4th 55, 67 (*ACLU*) [correct policy construes CPRA broadly if furthering the right of access, but narrowly if limiting the right of access].) The trial court ruled that a narrow construction was most appropriate here.

---

6 In *MinCal, supra,* 214 Cal.App.4th 259, 263, this court dismissed the petitioner's appeal for lack of jurisdiction. Accordingly, our reference in that decision to the trial court's statements about *Kusar, supra,* 18 Cal.App.4th 588 and a purported 30-day limitation on section 6254, subdivision (f)(2) in that case, for disclosures of information by a police department, did not amount to approval or adoption of that trial court reasoning, since we did not reach the merits of the dispute. (*MinCal, supra,* at pp. 262-263.)

7 In 2004, California voters approved Proposition 59, adding subdivision (b) to section 3 of article I of the Constitution, reading in part: "A statute, court rule, or other authority including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2); *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 181, fn. 14 (*Shapiro*).)

12

In conclusion on the costs issue, the court relied on *Kusar, supra,* 18 Cal.App.4th at page 601 as stating that former section 6257 (now § 6253, subd. (b)) provides only for recovery of duplication costs by the Department in providing the requested records. The ruling states that this costs restriction is both reasonable and appropriate where the mandatory disclosure is limited to current records of contemporaneous activity. The court deemed it to be unreasonable and inappropriate to grant a broader request that requires both generation and compilation of information from the historical archives, if only the direct costs of duplication can be charged.

After the current petition was filed, this court issued an order to show cause and held oral argument. We received amici curiae briefing from the Reporters Committee for Freedom of the Press, joined by six other media and transparency organizations.[8]

II

*LEGAL PRINCIPLES*

A. Review

The core purposes of the CPRA are to prevent secrecy in government and to contribute significantly to the public understanding of government activities. (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1016-1017; see *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court*

---

[8] The amici curiae include the following groups: Reporters Committee for Freedom of the Press, Californians Aware, California Newspaper Publishers Association, Digital First Media, First Amendment Coalition, Los Angeles Times and The McClatchy Company. There is no indication in the record that this request falls under an additional provision in section 6254, subdivision (f)(3), as having been made for a "scholarly, journalistic, political, or governmental purpose," or for investigation purposes by a licensed private investigator. (*Ibid.*; see 89 Ops.Cal.Atty.Gen. 204 (2006).)

(2007) 42 Cal.4th 319, 329 [CPRA principles enshrined in the California Constitution in article I, section 3, subdivision (b)(1): " 'The people have the right of access to information concerning the conduct of the people's business, and therefore, . . . the writings of public officials and agencies shall be open to public scrutiny.' "].)  There is an unavoidable "tension between the public's right to know and the equally important public interest in protecting citizens and public servants from unwarranted exposure of private matters."  (*City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1433 (*City of Richmond*).)

The CPRA generally presumes that all documents maintained by a public entity are subject to disclosure to any member of the public, unless a statutory exemption applies or the catchall exemption, section 6255, is satisfied (when public interest served by nondisclosure of records clearly outweighs the public interest in disclosure).  We examine the statutory requirements of section 6254, subdivision (f)(2) and related sections on a de novo basis, and evaluate the record for any substantial evidence support for the trial court's conclusions.  (*San Diego County Employees Retirement Assn. v. Superior Court* (2011) 196 Cal.App.4th 1228, 1237, 1241-1242 [statutory interpretation issues are questions of law subject to independent review, while the reviewing court accepts as true any trial court findings of the " ' "facts of the particular case," ' " where supported by substantial evidence]; *ACLU, supra,* 202 Cal.App.4th 55, 66 [substantial evidence standard used for trial court's factual determinations].)  "[A] reviewing court should weigh the competing public interest factors de novo, [but] it should accept as true the trial court's findings of the 'facts of the particular case' (Gov. Code, § 6255, subd. (a)),

14

assuming those findings are supported by substantial evidence." (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1072 (*Michaelis*); *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 650-651.)

" 'A court's overriding purpose in construing a statute is to ascertain legislative intent . . . .  In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning.  [Citation.]  Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished.' " (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1596.)

### B.  Language of the CPRA:  Records v. Information

Upon receipt of appropriate requests, the Department has the duty to provide access to its public records for inspection and/or copying.  (§§ 6252, subd. (b); 6253, subds. (a), (b).)  An appropriate request is one that "reasonably" describes identifiable public records or information that is not exempt from disclosure.  (§ 6253, subd. (b).)

The exemption language of section 6254, subdivision (f) provides that the Department (a local police agency) is not required to disclose any of the following *records*:  "(f) *Records* of complaints to, or investigations conducted by, or *records* of intelligence information or security procedures" or its "investigatory or security *files*." (Italics added.)  The first portion of section 6254, subdivision (f) nevertheless requires the Department to disclose, to victims and their representatives, basic "information" that is the result of an incident caused by certain enumerated offenses, with exceptions (no such disclosure is allowed that would endanger a witness's safety; no disclosure that would

15

jeopardize a pending investigation; no analysis or conclusions of the investigating officer to be disclosed).  (*Williams, supra*, 5 Cal.4th at p. 349.)  Here, Fredericks as a requestor is not such a "victim," nor does he seek "records" or "files," but rather, "information" derived from six months of such records.

Where such a request for law enforcement information derived from complaints or requests for assistance is made pursuant to section 6254, subdivision (f)(2), the agency ordinarily must disclose "the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, the time and date of the report, the name and age of the victim, [and] the factual circumstances surrounding the crime or incident."  Further, a general description of any injuries, property or weapons involved must be provided.  (§ 6254, subd. (f)(2).)  However, where victim information is known regarding certain designated crimes (many of them sex offenses) the victim or representative may request that his or her name be withheld.  (*Ibid.*)

When, as above, the Legislature has set forth detailed statutory provisions for mandatory disclosures from law enforcement investigatory files, the courts must adhere to its judgment "about what items of information should be disclosed and to whom." (*Williams, supra*, 5 Cal. 4th at p. 361.)  "Unless that judgment runs afoul of the Constitution it is not our province to declare that the statutorily required disclosures are

inadequate or that the statutory exemption from disclosure is too broad. . . . Requests for broader disclosure must be directed to the Legislature." (*Ibid*.)

## C. Issues Presented

We next inquire whether the Department made all appropriate disclosures by providing Fredericks with the Calls for Service reports, under the requirements of subdivision (f) of section 6254. To the extent the Department declined these requests, it had to demonstrate that statutory exemptions from disclosure applied, such as where "disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation." (*Ibid*.; see § 6255.) In part III, *post,* we address the scope of the request and the adequacy of the response.

Our second issue is whether the Department made the appropriate disclosures by providing Fredericks with the information in the Calls for Service reports, but only for a 60-day period. (Pt. IV, *post*.) An agency may legitimately raise an objection that a request is overbroad or unduly burdensome, or that the documents cannot be located with reasonable effort. (*California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 165-166 (*California First Amendment Coalition*).) The statutory weighing process of competing public interest factors, with regard to the "facts of the particular case" (§ 6255, subd. (a)), then comes into play.

Our third issue is whether the Department's proposed costs assessment complies with the statutory scheme, including sections 6253 and 6253.9, in its requirement that Fredericks pay hourly labor costs and per page copying costs for any further requested

17

information (such as the Incident History Reports, or more than 60 days of Calls for Service reports). (See Pt. V, *post*.)

III

*INFORMATION FROM CALLS FOR SERVICE REPORTS*

A. Statutory Language Requiring Disclosure

To satisfy its duties under subdivision (f)(2) of section 6254, the Department was generally required to disclose: "the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, *to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded*, the time, date, and location of occurrence, the time and date of the report, the name and age of the victim, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved." (Italics added.)

At first glance, the plain language of section 6254, subdivision (f)(2) indicates that the basic Calls for Service reports omit disclosure of certain required information. The bare bones of those reports do, at least arguably, provide the time, date, and location of occurrence, and the time and date of the report. Also arguably, there are valid restrictions against disclosures of the name and age of the "victims," if any, although this record states that the Calls for Service and Incident History Reports are created too early in the process to allow any accurate identification of any victims (that is, only reporting parties are listed). However, these Calls for Service reports do not give any details about some particular items listed in the subdivision, concerning "the time and nature of the

18

response" to such Calls for Service, or "*the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved.*" (*Ibid.*; italics added.)  According to the Department's compliance officer's declaration, few such details may be available at such early stages of the investigations.  It is unclear from this record the extent to which any such details are "recorded" in written or computerized form and are thus subject to requests for disclosure under section 6254, subdivision (f)(2).

Section 6257.5 states that the given reasons for a request are not determinative. (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1324 (*County of Santa Clara*).)  In that case, a framework for balancing disclosure obligations was set forth:  " ' " 'If the records sought pertain to the conduct of the people's business there is a public interest in disclosure.  The weight of that interest is proportionate to the gravity of governmental tasks sought to be illuminated and the directness with which the disclosure will serve to illuminate." ' [Citation.]  'The existence and weight of this public interest are conclusions derived from the nature of the information.' . . . [T]he issue is 'whether disclosure would contribute significantly to public understanding of government activities.' " (*Ibid.*)

"[A] person who seeks public records must present a reasonably focused and specific request, so that the public agency will have an opportunity to promptly identify and locate such records and to determine whether any exemption to disclosure applies." (*Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1088.)  In *ACLU, supra*, 202 Cal.App.4th 55, the court justifiably relied on legal standards from the

19

Freedom of Information Act (5 U.S.C. § 552 et seq.; FOIA) for determining a reasonable level of production: " '[W]hether the requestor has been specific enough so that a professional employee of the agency, familiar with the general subject area, could reasonably be expected to find the desired documents.' " (*Id.* at p. 85, fn. 16.)[9]

The basic rule is that an agency must comply with a request if responsive records can be located with reasonable effort. (*California First Amendment Coalition, supra,* 67 Cal.App.4th 159, 165-166.) If the agency would be required to create a new set of public records in order to provide responses to a CPRA request, such agency action may be found to exceed its statutory duties. (*Haynie, supra,* 26 Cal.4th at p. 1075.)

Some authorities recognize that an undue burden on an agency to obtain responsive documents can affect its obligations to search further and to produce. (*Valencia-Lucena v. United States Coast Guard* (D.C. Cir. 1999) 180 F.3d 321, 327 [under FOIA]; compare *Duenas Iturralde v. Comptroller of the Currency* (D.C. Cir. 2003) 315 F.3d 311, 315 (*Iturralde*) ["the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."].) In *Citizens Commission on Human Rights v. Food and Drug Administration* (9th Cir. 1995) 45 F.3d 1325, 1327, an agency's search for requested documents was considered to be reasonable, even though it was unable to produce all of the requested documents, because of the complexity of the 1,000-volume file that had to

---

9     Generally, the FOIA and the CPRA should receive parallel constructions where similar statutory provisions are involved. (*Williams, supra,* 5 Cal.4th at pp. 351-352.)

be searched, having an index of 482 pages, and referring to over 300,000 pages of undisclosed documents, some of which were privileged.

### B.  Reasonableness of Request

Under section 6253.1, the Department has the duty to assist the public in formulating reasonable requests and then to respond accordingly, by communicating the scope of the public information requested to the custodians of its records.  The purposes of the CPRA should be honored through such a reasonableness standard, so that not only an agency response, but the request that generates it, are within reasonable boundaries that are appropriate in light of the statutory scheme.  Section 6255, subdivision (a), expressly provides that an agency can justify withholding any record, even if no express statutory exemption from production applies, if the agency can show "that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."  That ground for nondisclosure contemplates "a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality."  (*Michaelis, supra,* 38 Cal.4th 1065, 1071.)

Neither party in the case before us expressly briefed the application of the section 6255 balancing test.  However, we are required to read related statutory enactments as a whole.  (*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 451-454; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)  These views on the appropriate balancing test were set forth in the concurring and dissenting opinion in *North County Parents Organization*, *supra*, 23

21

Cal.App.4th 144, 151-152 (conc. & dis. opn. of Huffman, J.): "Section 6255 'imposes on the California courts a duty . . . to weigh the benefits and costs of disclosure in each particular case.' [Citation.] A court performing this balancing test is authorized to take into account any expense and inconvenience involved in segregating non-exempt from exempt information, because the statutory term 'public interest' 'encompasses public concern with the cost and efficiency of government.' [Citation.] We may thus take it as established that the Act includes a policy favoring the efficiency of government and limitation of its costs. [¶] Moreover, although the evident purpose of the Act is to increase freedom of information by giving the public maximum access to information in the possession of public agencies [citation], such access to information is not unlimited under the Act. For example, section 6254 et seq. defines a number of categories of information that are exempt from disclosure; requests for records are subject to those constraints. The Act thus places both substantive and some financial constraints upon disclosure of public records."

Where an agency can show objectively that there is an undue burden in complying with a request, the CPRA provides for an extension of time. Under section 6253, subdivision (c), an agency's obligation to disclose in a timely manner may be changed by the circumstances of the case, if disclosable records are sought but specified "unusual circumstances" apply to them. Section 6253, subdivision (c)(4), outlines as "unusual circumstances" that justify an extension of time those that involve an agency's "need to compile data, to write programming language or a computer program, or to construct a computer report to extract data." Likewise, section 6253, subdivision (c)(2), specifies

22

that an agency's "need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are demanded in a single request," will constitute unusual circumstances and justify an extension of time to produce.

Here, the Department presented its compliance officer's declaration outlining details of what work it would take to comply with the entire request. Our review of the subject legal issues properly includes this evidence. (See *Campbell v. Superior Court* (2008) 159 Cal.App.4th 635, 647.) In opposition, Fredericks merely reiterates that the documents will somehow assist him in investment and for community safety concerns. We are mindful of the press of business of public agencies, particularly in these difficult fiscal times, and will not hold the Department to an impossible standard, but to a reasonable one. (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385; see *ACLU*, *supra*, 202 Cal.App.4th at p. 86, fn. 17 [public data should be produced if possible, even if the court wonders why anyone would want it].)

Construing the matter in favor of potential disclosure, as we must (*County of Santa Clara*, *supra,* 170 Cal.App.4th at pp. 1319-1320), we noted above that the Calls for Service reports provided fail to give any details about some of the information listed in section 6254, subdivision (f)(2), concerning "the time and nature of the response," or "the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved." (*Ibid*.) However, that is not the end of the inquiry. We next consider whether the request legitimately seeks all of this information, and for a period of more than 60 days.

23

IV

*TEMPORAL SCOPE OF REQUIRED DISCLOSURES*

A. *Kusar* Views:  60-Day Limit on Disclosures

In contending that the trial court properly applied the relevant sections of the CPRA, the Department mainly relies on *Kusar, supra*, 18 Cal.App.4th 588, 595, to support a reading of the CPRA as including a time limitation on requests to police departments for information about not only arrests, but citizen complaints or requests for assistance concerning crimes.  (§ 6254, subds. (f)(1), (2).)

In *Kusar, supra,* 18 Cal.App.4th 588, 595, the court acknowledged that section 6254, subdivision (f)(2) allows the public to have access to certain limited kinds of "information" extracted from such records and files, and that the term "information" can arguably be reasonably construed broadly and generally.  "The statutory language alone does not conclusively eliminate an interpretation which would authorize the release at a later time of information which was 'current' when compiled.  *We therefore conclude the language is ambiguous* and it is necessary to look at additional factors to determine the purpose and intent of the statute."  (*Kusar, supra,* at p. 596; italics added; *Williams, supra*, 5 Cal.4th 337, 348, 360-361.)

Such ambiguities exist when statutory language is "susceptible of more than one reasonable interpretation."  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)  " 'If the statutory terms are ambiguous, we may examine extrinsic sources, including . . . the legislative history.' "  (*County of Santa Clara*, *supra*, 170 Cal.App.4th at p. 1333.)

24

The decision in *Kusar, supra,* 18 Cal.App.4th 588 arose in the context of a petitioner who worked for a lawyer who represented a litigant who was, in a separate civil action, suing two deputy sheriffs for assault and battery. In the litigant's companion action, his lawyer had moved unsuccessfully for discovery of 10 years of records of prior arrests by those deputies, but had failed to secure relief. (*Id.* at p. 591.) "In an apparent end run around Penal Code section 832.7, a legal secretary employed by the litigant's attorney then filed a CPRA action for the same records. [Citation.] [The court in *Kusar*] thwarted the maneuver, finding that, to the extent Government Code section 6254, subdivision (f), permits disclosure of investigatory files, it applies only to contemporaneous records of current police activities." (*City of Richmond, supra,* 32 Cal.App.4th 1430, 1436.)

At the time *Kusar, supra,* 18 Cal.App.4th 588 was decided, the version of section 6254, subdivision (f)(1) in effect, governing disclosure of information from investigatory records about arrests and arrestees, required disclosure of the arrestees' "current" addresses. Thus, under section 6254, subdivision (f)(1), agencies formerly had to disclose to the public "[t]he full name, *current* address, and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest [etc.; including the location where the individual is *currently* being held; that latter portion remains in the current statutory version]." (Italics added; *Williams, supra,* 5 Cal.4th 337, 360-361.)

25

Likewise, the version of section 6254, subdivision (f)(2) in effect when *Kusar, supra,* 18 Cal.App.4th 588 was decided, required agencies to disclose to the public the full name and *current* address of *victims* named in citizen complaints or requests for assistance concerning crimes. In 1993, the court in *Kusar* relied on the statute's legislative history to resolve potential ambiguity in the term "information," and it drew the conclusions that the section was intended only to continue a "common law tradition of contemporaneous disclosure of individualized arrest information in order to prevent secret arrests and to mandate the continued disclosure of customary and basic law enforcement information to the press." (*Kusar, supra,* 18 Cal.App.4th at p. 598.) In *Kusar,* the mandate of section 6254, subdivisions (f)(1) and (f)(2) was deemed to be "limited to contemporaneous information," in light of related statutes regulating "the maintenance and disclosure of historical [arrest] information" being sought (e.g., Pen. Code, §§ 832.5, 832.7, 832.8 or Evid. Code, §§ 1043-1046, all of which impose " 'rather careful restrictions upon the disclosure of information from records of citizen complaints against police officers' "). (*Kusar, supra,* at p. 599; *City of Richmond, supra*, 32 Cal.App.4th 1430, 1436.)

As further explained in *City of Richmond, supra*, 32 Cal.App.4th 1430, 1436-1438, the court in *Kusar, supra,* 18 Cal.App.4th at page 600, concluded that section 6254, subdivision (f) "could not be construed in a way that authorized the circumvention of the rulings of a court made pursuant to the discovery statutes protecting the confidentiality of law enforcement information." However, the relevant time frame disclosure ruling in *Kusar* was largely based on then-language of section 6254, subdivision (f)(1), which

26

referred to the disclosed information as including "(1) the '*current* address' of an arrestee, (2) the time and date of booking," as well as "the location where the arrestee is then *currently* being held," etc. (*Kusar, supra,* at p. 595; original italics.) From those terms about the currentness of information, the court concluded that the Legislature only intended to require information about recent arrests, but not historical information. The court also relied on the legislative history to conclude that only current information must be disclosed. (*City of Richmond, supra,* at pp. 1437-1438.)

In the context of *Kusar*, the court's conclusions in applying the existing version of the statute were understandable, to say that such specified "information" is "patently the type of information which would be relevant to current and contemporaneous police activity. Much of it would make no sense in the context of a 10-year history of arrest activity. Indeed, if construed in any other way this new exception would come close to consuming the exemption contained in the first paragraph of subdivision (f)." (*Kusar, supra*, 18 Cal.App.4th at pp. 595-596.)

By comparison, the Supreme Court in *Williams, supra*, 5 Cal.4th at pages 354 to 357 and 358 to 362, was construing the same version of the statute, and was required to address the issue of whether section 6254, subdivision (f) contains "a time limit on the exemption [from disclosure] for investigatory files," and concluded that it did not. (*Williams, supra,* at p. 357.) The court read the subdivision as a whole and noted that it is designed to protect interests that outlive the conclusion of a particular investigation (e.g., the safety of a witness or a relationship with another ongoing investigation). (*Ibid*.) The court decided that disclosure protections for confidential information contained in an

27

investigatory file do not terminate with the conclusion of the original investigation. Rather, the Legislature evidently intended that the protections for disclosure of investigatory files may remain applicable and may make confidential certain safety-related information within them. (*Id*. at pp. 361-362.)

B.  1995 Amendments to Section 6254, Subdivisions (f)(1) and (2)

In 1995, the language of section 6254, subdivisions (f)(1) and (2) was amended to remove the terms "current address" for both arrestees and victims.  (Stats. 1995, ch. 778, §§ 1-4, pp. 6056-6081.)  The main terms expressly relied upon by the court in *Kusar, supra,* 18 Cal.App.4th 588, to support its conclusions regarding an imposed time limitation upon disclosure obligations are no longer in the statute.

In the legislative history of the 1995 changes to section 6254, subdivision (f)(2), the Governor's chaptered bill file (Sen. Bill No. 1059 (1995-1996 Reg. Sess.), ch. 778) shows that the sponsor carried the legislation on behalf of the California Peace Officers Association, to address a problem being experienced by law enforcement under the CPRA.  This was the increasing number of boilerplate requests from marketing organizations seeking to profit from the disclosed names and addresses of crime victims and arrestees.  Law enforcement agencies were experiencing a tremendous strain from the processing of those requests, creating pressure upon their "already scarcely allocated time and resources."  (Sen. Steve Peace, letter to Governor Pete Wilson (1995-1996 Reg. Sess.) Sept. 7, 1995, Governor's chaptered bill files, ch. 778.)  The bill removed the requirement to disclose *current* address information of arrestees and victims, except as provided in existing law to parties such as journalists, scholars, licensed private

28

investigators and others with specific purposes. The Governor's Office of Planning and Research supported the signing of the bill to delete the requirement that the current address of every individual arrested be disclosed, and to delete the requirement that the current addresses of victims of certain crimes should be disclosed. Its recommendation stated that law enforcement finds itself under "a massive time drain" when "acting as clerical staff for these marketing firms." The recommendation concluded, "In these times of fiscal constraints, law enforcement resources should be focused on higher priority services to the public. However, this bill would still preserve legitimate access to this information." (Governor's Office of Planning and Research Enrolled Bill Rep. on Sen. Bill No. 1059 (1995-1996 Reg. Sess.) Sept. 8, 1995, p. 4.)

C. Reasonableness Requirement for Temporal Scope of Request

It is important to note that the references to "information" in section 6254, subdivisions (f)(1) and (2) are ambiguous and should be read in context. To the extent that the holding in *Kusar, supra,* 18 Cal.App.4th 588 (that only contemporaneous law enforcement information is disclosable), states that it also applies to section 6254, subdivision (f)(2), its persuasiveness is weakened, because the arrest information sought in *Kusar* only involved subdivision (f)(1). Here we are discussing disclosure of information from "complaints and requests for assistance," under section 6254, subdivision (f)(2). *Kusar* should not be read as establishing a time limitation for such disclosures under section 6254, subdivision (f)(2), since the information about citizen complaints and requests for assistance referred to in that statutory subdivision is not

29

always the same as information about arrestees, and it may raise different policy concerns.

The Department provided Fredericks with limited information regarding the time, date, and location of the incidents (etc., as described above), and only for a 60-day period. We are now reading and applying an amended version of section 6254, subdivisions (f)(1) and (2), that deleted the "current" language about disclosable addresses of arrestees or victims. *Kusar* focused upon construing the statute to ensure that "sensitive information contained in records relating to allegations of police misconduct will be disclosed only upon a showing of manifest necessity" (*Kusar, supra,* 18 Cal.App.4th at p. 600), according to other established statutory procedures. The court was primarily concerned that the civil litigant and his representatives should not be allowed to obtain data denied to him in his companion case, such as arrest information, by claiming it "as a matter of right through the [CPRA]." (*Ibid.*)

Unlike *Kusar, supra,* 18 Cal.App.4th 588, this case is not a clear "end run" around other discovery procedures conducted in a separate civil action. (*City of Richmond, supra,* 32 Cal.App.4th at p. 1436.) Likewise, the concerns leading to the Supreme Court's decision in *Williams, supra,* 5 Cal.4th 337 are not directly involved here, because these Calls for Service reports and the Incident History Reports are prepared at an earlier stage of the investigation, and it is not yet known which safety concerns should authorize exemptions from disclosures of investigatory file information, as set forth in the body of section 6254, subdivision (f). Thus, the conclusion in *Williams,* that section 6254, subdivision (f) contains no time limit on the exemptions from disclosure allowed for

30

investigatory files, is consistent with a plain reading of the subdivision, to find no "contemporaneous" limitation on disclosures of information from citizen complaints or requests for assistance. (See *Williams, supra,* at pp. 357, 361-362; § 6254, subd. (f)(2).)

On their face, the disclosure requirements in section 6254, subdivision (f)(2), for "the time, substance and location of all complaints or requests for assistance received" by a state or local law enforcement agency, and the responses thereto, are expansive. There is no basis in the plain language of the statute to read into it any 60-day limitation on access to disclosable information. But that is only the beginning of the inquiry about the proper scope of disclosure, when all of the policies and legislative history of the CPRA are taken together.

### D. Remand and Inquiry into Allowable Exemptions

CPRA policies require that in deciding whether a particular time limitation may or must be read into section 6254, subdivision (f)(2), concerning an agency's response to a request, certain statutorily identified reasonableness concerns that were not addressed in *Kusar, supra,* 18 Cal.App.4th 588, should be taken into account. Under section 6255, an agency's public interest showing about the reasons for nondisclosure, as opposed to disclosure, may be considered along with the factors supporting the desired request. The overriding issue is "whether disclosure would contribute significantly to public understanding of government activities." (*County of Santa Clara*, *supra*, 170 Cal.App.4th at p. 1324.) The legislative history of the 1995 amendments to section 6254, subdivisions (f)(1) and (2) identifies issues such as fiscal constraints and time pressure being placed upon law enforcement agencies that must respond to CPRA requests for

31

arrestee information and victim address information. The Legislature adjusted the statutory terms accordingly, removing "current" terms. (Stats. 1995, ch. 778, §§ 1-3, pp. 6056-6081.)

In *Sierra Club v. Superior Court* (2013) 57 Cal. 4th 157, the Supreme Court decided that a CPRA statutory exemption for "computer software" in section 6254.9, subdivision (a) (a term which included computer mapping systems under § 6254.9, subd. (b)), did not also apply to the mapping database in a certain file format; the underlying database material had to be disclosed, although the computer software required to manipulate the database remained properly exempt from disclosure. The case illustrates that the statutory scheme requires a case-by-case balancing process. (*Michaelis, supra,* 38 Cal.4th 1065, 1071.)

This record makes an undisputed showing that the Department would have to undertake a complicated, time-consuming review, redaction, and production process to arrange for the release of nonexempt information, as currently sought by Fredericks. Due to the nature of the Calls for Service reports and underlying Incident History Reports, created at the opening stages of the investigations, the identities of victims and witnesses that are subject to protection are not yet clear. (See fn. 4, *ante*, regarding potential applicability of other Penal Code sections regarding victim information found in section 6254, subdivision (f)(2).) Even though the plain language of section 6254, subdivision (f)(2) imposes no time limitation on disclosure of information sought, not all such requested disclosures must be granted if the trial court is appropriately presented with relevant competing public interest factors, which may properly include considerations

32

about a fiscal and workload burden being imposed upon a public agency by a particular request.  (§ 6255, subd. (a).)

As a reviewing court, we recognize that the trial court has not yet had the opportunity to make the relevant "findings of the 'facts of the particular case' (Gov. Code, § 6255, subd. (a))," and we consequently do not assume any such findings have any substantial evidence support.  (*Michaelis*, *supra*, 38 Cal.4th at p. 1072.)  On remand, the whole picture should be examined to determine the extent of an appropriate, reasonable response to this request under section 6254, subdivision (f)(2), both as to content and time frame.  The terms of section 6254, subdivision (f)(2) permit the Department to withhold the names of victims of any crime defined by the specified Penal Code sections (and potentially including Pen. Code, §§ 220 or 646.9), if identified and if nondisclosure is appropriately requested.  The Department can put forward a showing that a particular item of information would likely endanger the safety of a person involved in an investigation (according to the already specified exceptions in the body of section 6254, subdivision (f)), or that disclosure of information "would endanger the successful completion of the investigation or a related investigation" (*ibid*. [another specified basic statutory exception]).

Nothing in article I of the Constitution, section 3, subdivision (b)(5) (Prop. 59) requires a different conclusion.  We are to interpret the constitutional provision as preserving "any constitutional or statutory exception to the right of access to public records . . . that is in effect on the effective date of this subdivision, including, but not limited to, any statute protecting the confidentiality of law enforcement and prosecution

records."  (Cal. Const., art I, § 3, subd. (b)(5).)  That language requires that statutes be "narrowly construed" if they limit "the right of access" to information concerning the conduct of the people's business.  (*Shapiro, supra*, 134 Cal.App.4th at p. 181, fn. 14.) The CPRA does not expressly provide a time limitation for this information, but it does not proscribe one either, if the public interest balancing factors support one, which is for the trial court to determine upon remand, based upon the showings made and the statutory exemptions for safety concerns, if any.  We next address the fiscal and personnel costs entailed in production of computerized and other records, as potential public interest factors to be balanced in this process.

V

*ACTUAL DUPLICATION COSTS; LABOR COSTS*

After producing limited information, which we have found above did not fully comply with its disclosure duties (at least with regard to some facts and circumstances and responses surrounding the crime or incident, to the extent they were "recorded," § 6254, subd. (f)(2); or nonexempt, § 6255), the Department imposed a requirement that Fredericks pay substantial personnel and copying costs associated with preparing further information, if pursued.  Generally, the ancillary costs of retrieving, inspecting, and handling material to be prepared for disclosure may not be charged to the requestor. (*North County Parents Organization, supra*, 23 Cal.App.4th at p. 148 [but concurring and dissenting opinion would allow access to public records to be circumscribed in appropriate instances by "reasonable conditions regarding format and price"], conc. & dis. opn. of Huffman, J., at p. 154.)  However, since this court decided that case in 1994,

34

another CPRA costs provision was added in 2000, section 6253.9, subdivision (b) (Stats. 2000, ch. 982, § 2, p. 7142), to allow allocation of costs for production of information in an electronic format.

Before addressing the distinctions between paper and electronic records, we note that the opinion in *Kusar*, *supra,* 18 Cal.App.4th 588 provides some still valid guidance on the financial aspects of the 10 years of disclosure of arrest records, as requested there. At that time, former section 6257 (repealed and replaced in 1998 by current section 6253) provided only for recovery of duplication costs by the law enforcement agency involved. (*Kusar, supra,* at p. 601.) Section 6253, subdivision (b) currently allows recovery of the direct costs of duplication, and its subdivision (c) identifies unusual circumstances that may justify an extension for the time for production. Because of the distinction between "information" sought, and the "records" or "files" in which it is found, the court in *Kusar* noted that an agency would likely incur a substantial financial burden which might be unreasonable and inappropriate, if the agency were required *not only to generate and compile information from historical archives, but also to extract nonexempt information from it for copying and disclosure.* Based in part on those costs considerations, the court in *Kusar* determined that only contemporaneous records of current police activities must be disclosed. (*Kusar, supra,* at p. 595.)

Other courts have accorded differing weights to an agency's financial concerns about making appropriate disclosures. " 'There is nothing in the [CPRA] to suggest that a records request must impose *no* burden to the government agency.' [Citations.] Thus, for example, the $43,000 cost of compiling an accurate list of names was not a 'valid reason

35

to proscribe disclosure of the identity of such individuals.' " (*County of Santa Clara, supra,* 170 Cal.App.4th 1301, 1327, original italics, quoting *CBS Broadcasting, Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 909.) In *County of Santa Clara, supra,* at pages 1336 to 1337, the court was discussing the application of both section 6253, subdivision (b) and section 6253.9, subdivision (b) to decide whether an agency could charge more than the direct cost of duplication to produce computerized records. The court cited to *North County Parents Organization, supra,* 23 Cal.App.4th at page 148, for the rule that when paper records are sought, "direct cost has been interpreted to cover the 'cost of running the copy machine, and conceivably also the expense of the person operating it' while excluding any charge for 'the ancillary tasks necessarily associated with the retrieval, inspection and handling of the file from which the copy is extracted.' " (*County of Santa Clara, supra,* at p. 1336.)

However, when electronic records are requested, "the statute allows an agency to recover specified ancillary costs in either of two cases: (1) when it must 'produce a copy of an electronic record' between 'regularly scheduled intervals' of production, or (2) when compliance with the request for an electronic record 'would require data compilation, extraction, or programming to produce the record.' (§ 6253.9, subd. (b)(1), (2); [citation].) Under those circumstances, the agency may charge 'the cost to construct a record, and the cost of programming and computer services necessary to produce a copy of the record . . . .' (§ 6253.9, subd. (b).)" (*County of Santa Clara, supra,* 170 Cal.App.4th at p. 1336.) In that case, remand was ordered on the question of costs, to enable the trial court to resolve the parties' opposing factual contentions. (*Id.* at p. 1338.)

36

Always, it depends on the respective interests that are proven and balanced. (See *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1188 [burden of showing a request is too onerous lies with the agency under § 6255].)  In the case before us, the statute imposes significant confidentiality concerns affecting the requested disclosures, and under section 6254, subdivision (f)(2), redaction may become necessary of victim and witness or other investigative safety information, at the potential cost of agency staffing time.  We concluded above that to apply the plain terms of section 6254, subdivision (f)(2), the trial court must reconsider whether a longer time period for the request should be granted for disclosure, and if all requested information is disclosable. The court must allow the creation of a more complete record on the claimed reasonableness of the request and the claimed burdensomeness of the anticipated response.  (See *County of Santa Clara, supra,* 170 Cal.App.4th at pp. 1327-1329.)

Specifically, the parties should be allowed to address the factors relevant to the balancing approach of section 6255, subdivision (a), about whether "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (*Ibid.*)  If Fredericks can show all the information he sought meets this standard, for a given time period, the actual duplication costs allowed by section 6253, subdivision (b) can be charged. (*North County Parents Organization, supra*, 23 Cal.App.4th 144, 146-148; 2 Witkin, Cal. Evidence (5th ed. 2012) Witnesses, § 297, p. 634.)

As to additional or ancillary costs of production of electronic records, if the trial court decides on remand that more disclosures (e.g., over a greater time period) are

37

consistent with the CPRA balancing process, but that they would require generation, compilation and redaction of information from confidential electronic records, then section 6253.9, subdivision (b) may allow the court to condition disclosure upon an additional imposition of fees and costs, over and above the direct costs of duplication (§ 6253, subd. (b)).  Section 6253.9, subdivision (b) contemplates that the trial court will make a determination about the reasonableness of any fiscal burdens that would be placed on the Department from the requested disclosures.

The petition for writ of mandate is granted with directions to the trial court to allow such further procedures as will identify the disclosable records within the balancing standards of section 6255, while recognizing that section 6254, subdivision (f)(2) lacks any express time limitation on disclosures.  The trial court should reconsider Fredericks's request and the scope of any required disclosures as they are affected by the costs of compliance, based on all the relevant CPRA public interest balancing and policy factors.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its judgment and order of June 10, 2014 denying the petition, with directions to the court to allow appropriate further proceedings on the petition that will address the disclosure requirements and exemptions in section 6254, subdivision (f)(2), in light of the public interest balancing factors identified in section 6255, subdivision (a) and other applicable authorities, concerning the scope of disclosure as it is affected by the costs of compliance.

Costs of this proceeding to be borne by each party individually. (Cal. Rules of Court, rule 8.493 (a)(1)(A).)

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.